**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

TYRONE L. COLLINS
ADC # 111854                                                                                          PLAINTIFF

V.                              CASE NO. 2:11CV00040 DPM/BD

DANNY BURL, *et al.*                                                                          DEFENDANTS

**RECOMMENDED DISPOSITION**

I.   **Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge D. P. Marshall Jr.  Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection.  An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.  A copy will be furnished to the opposing party.

If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record.  By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections to:

>   Clerk, United States District Court
>   Eastern District of Arkansas
>   600 West Capitol Avenue, Suite A149
>   Little Rock, AR 72201-3325

**II.    Discussion:**

Plaintiff Tyrone Collins, an Arkansas Department of Correction ("ADC") inmate, originally filed this case *pro se* under 42 U.S.C. § 1983. In his complaint, Mr. Collins claims that Defendant Burl unlawfully discriminated against him based on race; Defendants Crumpton, James and Gray violated the constitutional prohibition against inflicting cruel and unusual punishment by failing to adequately supervise him while he was on a hunger strike; and that Defendants Crumpton, James, and Gray were deliberately indifferent to his medical needs. Mr. Collins is now represented by court-appointed counsel.

Defendants have moved for summary judgment on all of Mr. Collins's claims. (Docket entry #51) They argue that: Mr. Collins's Eighth Amendment claim fails as a matter of law; Defendants are entitled to sovereign immunity in their official capacities; Defendants are entitled to qualified immunity; and Mr. Collins's claim for injunctive relief is now moot. Mr. Collins, through his court-appointed attorney, has responded to the motion.[1] (#60, #61)

---

[1] Because Mr. Collins has failed to state a deliberate-indifference claim, as a matter of law, the Court will not address the Defendants' qualified-immunity argument in

The Court recommends that the Defendants' motion for summary judgment (#51) be GRANTED. Mr. Collins's claims should be DISMISSED, with prejudice.

### III. Discussion:

    A.    Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must respond with specific facts that are genuinely disputed. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). When a plaintiff does not come forward with enough evidence to establish a necessary element of his claim, the moving party is entitled to judgment as a matter of law on that claim. *Celotex Corp.*, 447 U.S. at 322-23, 106 S.Ct. at 2552.

    B.    Sovereign Immunity

Mr. Collins's claims for money damages from the Defendants in their official capacities are barred, of course, by sovereign immunity. A civil litigant cannot recover

---

this Recommendation. Further, Mr. Collins does not dispute that his claim for injunctive relief is now moot. Accordingly, the Court will not address that argument in this Recommendation.

money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). Official-capacity claims against the Defendants for money damages should be dismissed based on sovereign immunity.

    C.    Equal Protection Claim

Here, Mr. Collins complains that when he was seen by the classification committee on July 6, 2012, he was assigned to field utility, more commonly referred to as the "hoe squad," and a less desirable job assignment than those he had previously held. (#52-5 at p.21) In his complaint, Mr. Collins, an African-American, alleges that this decision was motivated by race.[2] In support of his argument, he claims that, although inmates Anthony Church and Terry Pounder were similarly situated to him, they were not assigned to the hoe squad.

An inmate bringing an equal protection claim must show intentional or purposeful discrimination. *Klinger v. Dep't. of Corr.*, 31 F.3d 727, 733 (8th Cir. 1994). "The heart of an equal protection claim is that similarly situated inmates were treated differently and that this difference in treatment bore no rational relationship to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (citing *Timm v. Gunter*, 917 F.2d 1093, 1103 (8th Cir. 1990)).

Thus, an equal protection analysis begins with this question: Has the inmate

---

    [2] In his deposition, it is unclear why Mr. Collins believed that Defendant Burl discriminated against him. He states that "it could have been high social status. It could have been religion." (#52-5 at p.36)

alleged facts showing that he was treated differently from others who were similarly situated? *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999).  Here, Mr. Collins argues that he was similarly situated to inmates Church and Pounder because they were all Class I inmates who had recently been released back into general population.  (#52-5 at p.24) Defendants, however, contend that because: Mr. Collins was convicted of aggravated robbery, kid napping, and rape; he had been "medically unassigned" (meaning he could not be assigned a job); he had a federal detainer in his criminal record; and he had a lengthy disciplinary history, he was not similarly situated to inmates Church and Ponder. (#52 at pp.2, 3, 6; #52-4 at pp.23-26; #52-5 at p.63)  Mr. Collins does not refute these facts in his response to the Defendants' motion.  As a result, the Court cannot conclude, as a matter of law, that Mr. Collins was similarly situated to inmates Church or Ponder, and Mr. Collins's equal protection claim must fail.

    D.    Deliberate Indifference

Mr. Collins claims that he began his seven-day hunger strike on July 20, 2010, and informed ADC staff that he was beginning the strike by submitting a grievance.  (#52-5 at p.46)  He alleges that during his hunger strike, he sent a request to Defendant Gray, who forwarded it to Defendant Crumpton.  According to Mr. Collins, Defendant Crumpton came to see him during the third day of his hunger strike, but only inquired as to how

many days Mr. Collins had been on a hunger strike.[3]  (#52-5 at p.47)

On the eighth day, Mr. Collins allegedly ended his hunger strike.  (#52-5 at p.51)  He explains that when he attempted to eat breakfast that day, he vomited.  (#52-5 at p.53)  The next day, he began experiencing discoloration of his fingernails and numbness in his hands.  (#52-5 at p.52)  In addition, Mr. Collins testified that during his hunger strike, he "was blacking out off and on," and "[b]arely could stand up."  (#52-5 at p.55)  Mr. Collins, however, did not request medical attention; nor did he submit any sick-call requests.  (#52-5 at pp.53-54)

Mr. Collins claims that Defendants Crumpton, James, and Gray are liable because they did not inform the medical department that he was on a hunger strike; nor did they request any medical treatment for Mr. Collins.  (#52-5 at pp.56-60)

The Defendants first dispute the length of Mr. Collins's hunger strike.  According to the "post orders" attached to the Defendants' motion, Mr. Collins "refused chow" on July 20, 2010, July 21, 2010, July 22, 2010, and July 23, 2010.  (#52-2 at pp.2-3)  Although Mr. Collins claims that the hunger strike lasted until July 27th, the post orders do not indicate that Mr. Collins refused any meals after July 23, 2010.[4]  (#52-2 at pp.3-5)

Next, the Defendants contend that Mr. Collins began experiencing the symptoms

---

[3]  The Court notes that Defendant Crumpton did not recall seeing Mr. Collins during the hunger strike at issue.  (#61-2 at p.4)

[4]  There is a discrepancy in the post order for July 24, 2010.  Although the notation in the post order indicates that Mr. Collins refused chow on that date, the notation was scratched through.  (#52-2 at p.3)

6

that he complained of following his hunger strike months before he refused to eat. In support of their motion, they offer a grievance form submitted by Mr. Collins on March 30, 2010. (#52-4 at p.17) In that grievance Mr. Collins complains that he has a "permanent shortage of blood flow in my hands that has caused my finger nails to turn gray." *Id*. Mr. Collins also explains that his hands shake, may turn purple, and swell. *Id*. In addition, on May 26, 2010, Mr. Collins submitted another grievance in which he complains that his finger nails turn gray due to a blood disorder. (#52-4 at p.49)

In order to state a deliberate-indifference claim, Mr. Collins must prove that he was incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825 (1994). He must also show that officers "both knew of and disregarded an excessive risk to [his] health and safety." *Holden v. Hirner*, 663 F.3d 326, 341 (8th Cir. 2011). Deliberately indifferent conduct is, "akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Here, Mr. Collins has failed to present any evidence for a reasonable fact-finder to conclude that he either was exposed to a substantial risk of serious harm or that the named Defendants were aware of a risk of serious harm based on his alleged hunger strike. Mr. Collins never complained of a need for medical treatment either during or after the hunger strike at issue. Moreover, the undisputed evidence shows that the injuries that Mr. Collins claims to have sustained as a result of the hunger strike were pre-existing.

Because he has not come forward with evidence that these conditions were aggravated as a result of the strike, Mr. Collins has failed to create a genuine issue of material fact, and the Defendants are entitled to judgment as a matter of law on Mr. Collins's deliberate-indifference claims.

Further, Mr. Collins's claim that the Defendants violated ADC protocol by failing to notify the medical and mental health departments that he was on a hunger strike falls short. In support of this argument, Mr. Collins provides excerpts from Defendant James's deposition testimony.

Defendant James testified that after an inmate has refused all meals for three consecutive days, ADC protocol requires that he inform the infirmary and the inmate's supervisor to let them know an inmate is on a hunger strike. (#61-3 at p.3) According to Defendant James, she should not start an investigation regarding a possible hunger strike under the three days have passed. *Id*. Defendant James testified that she relies upon the "logs," or post orders, to determine whether an inmate has refused specific meals. (#61-3 at pp.4, 7) Defendant James testified that she did not recall seeing the post orders regarding Mr. Collins's hunger strike, although she did receive the grievance in which Mr. Collins stated that he was beginning the strike. (#61-3 at p.7) She explained that if she had seen these documents, she would have placed copies in the inmate's file. *Id*. Although these documents would have been discovered during the investigation of a possible hunger strike, she could not explain why she had not seen these particular

documents. *Id*.

Even assuming that Mr. Collins's hunger strike continued for more than three days, and that Defendants James, Crumpton, and Gray knew that Mr. Collins was on a hunger strike, but failed to notify medical in violation of ADC policy, the failure to follow ADC policy or protocol falls short of stating a constitutional claim. See *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997).

Because Mr. Collins has failed to present any evidence that he was actually in need of medical or mental health treatment during the hunger strike at issue, or that the Defendants were actually aware of any such need, his deliberate indifference claim fails as a matter of law.

## IV.   Conclusion:

The Court recommends that the Defendants' motion for summary judgment (#51) be GRANTED and that Mr. Collins's claims be DISMISSED, with prejudice.

DATED this 5th day of November, 2013.

_____
UNITED STATES MAGISTRATE JUDGE